IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TWO MEN AND A TRUCK/INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT LEE THOMAS, individually and d/b/a "TWO MEN AND TWO TRUCKS,"<br><br>Defendant. | CASE NO. 8:12CV340<br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Plaintiff's Motion for Preliminary Injunction. (Filing No. 8.) Plaintiff Two Men and a Truck/International, Inc., has filed a brief and index of evidence in support of its Motion. (Filing Nos. 9, 10.) Defendant Robert Lee Thomas, individually and d/b/a "Two Men and Two Trucks," has not filed an opposition to Plaintiff's Motion, and the time for filing an opposition has expired. For the reasons stated below, the Plaintiff's Motion will be granted.

## FACTUAL BACKGROUND[1]

### I. The TWO MEN AND A TRUCK Mark

Plaintiff is the largest franchised local moving company in the United States. It is a nationwide franchisor engaged in licensing the use of its service mark, TWO MEN AND A TRUCK, and its moving-services operating system. Currently, there are over 180 licensed TWO MEN AND A TRUCK locations, located in thirty-two different states, and over 1,300 moving trucks operating throughout the United States, that display the

---

[1] The facts are derived from the Plaintiff's statement of facts and Verified Complaint (Filing Nos. 1, 9). See NECivR 7.0.1(b)(1)(C) ("Failing to file an opposing brief is not considered a confession of a motion but precludes the opposing party from contesting the moving party's statement of facts.")

TWO MEN AND A TRUCK mark.  Each franchise is operated pursuant to a franchise agreement under which Plaintiff imposes certain obligations and retains certain rights to help ensure the protection of Plaintiff's marks and the uniform quality of services its franchisees provide.  Two of its 180 licensed locations are located in Nebraska, one of which is Two Men and a Truck/Omaha (the "Omaha Franchise"), which serves Omaha, Nebraska, and its surrounding areas.

Since at least 1988, Plaintiff, itself or through its franchisees, has used it mark, either alone or in combination with design elements, in connection with moving-related services.  Its use has been valid and continuous since the date of its first use.  The United States Patent and Trademark Office ("USPTO") issued to Plaintiff, and Plaintiff owns, two incontestable[2] concurrent use trademark registrations for its TWO MEN AND A TRUCK mark in standard characters:  U.S. Trademark Reg. 2,020,083, issued on December 3, 1996, and U.S. Trademark Reg. No. 3,006,814, issued on October 18, 2005 (collectively referred to as the "TWO MEN AND A TRUCK Mark").

## II. Defendant's Use of the "Two Men and Two Trucks" Name and Mark

Defendant, is not, and never has been, a TWO MEN AND A TRUCK franchisee or otherwise affiliated with Plaintiff.  Without Plaintiff's authorization and despite Plaintiff's objections, Defendant has been using the name and mark "Two Men and Two Trucks" in connection with his competing moving services business that offers services identical to, and competitive with, the services Plaintiff and its Omaha Franchise offer.

Defendant advertises his services using the same means, including the Omaha, Nebraska, telephone directory and the Internet, and targets the same customers and

---

[2] Plaintiff states that "[a]ffidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065 . . ." making the registrations "incontestable." (Filing No. 1 at ¶¶10-11.)

potential customers, including those in and around the Omaha metropolitan area, as Plaintiff and the Omaha Franchise.  For example, Defendant has listed "Two Men and Two Trucks" in the 2012-2013 Omaha-area telephone directory in the business white pages and in the yellow pages under "movers," and maintains a website at <www.twomenandtwotrucks.com>, has distributed fliers that utilize the name and mark "Two Men and Two Trucks," and the moving truck Defendant uses to perform services bears the name and mark "Two Men and Two Trucks."  Defendant was aware of Plaintiff's TWO MEN AND A TRUCK Mark and of Plaintiff's preexisting senior rights in that mark when Defendant first used the name and mark "Two Men and Two Trucks."

Defendant's unauthorized use of the mark "Two Men and Two Trucks" has caused, is causing, and will continue to cause, harm to Plaintiff's business, reputation, and goodwill.  For example, the Better Business Bureau has given Defendant's "Two Men and Two Trucks" moving services business an "F" rating on a scale of "A+" to "F."  The Better Business Bureau's review of Defendant's moving services notes that consumers have reported confusion over the similarity of the name of Defendant's company with the name of Plaintiff's company, a "BBB" accredited business.

Furthermore, Defendant has been operating his business in Nebraska intrastate commerce as a motor carrier without receiving authorization to do so from the Nebraska Public Service Commission.  As a result, on May 29, 2012, the Nebraska Public Service Commission sent a "No Authority" letter to Defendant demanding that he immediately cease his unauthorized operations.  Defendant never responded to the "No Authority" letter.  On August 27, 2012, an official from the Nebraska Public Service Commission

served Defendant with several citations for performing moving services without insurance and without authorization from the State of Nebraska.

## III. Reported Instances of Actual Confusion

### A. David Jasper

In June 2012, David Jasper, an Omaha resident, was looking to hire the Omaha Franchise to perform a local residential move. He searched the Omaha telephone directory and found an entry for "Two Men and Two Trucks." He believed that entry was for the Omaha Franchise. He called the telephone number associated with the "Two Men and Two Trucks" listing, (402) 208-0210, and the person who answered the phone told Jasper that his move could be performed for a flat rate of $250. Jasper hired Defendant to perform his move, believing it to be the Omaha Franchise.

Defendant's movers were scheduled to arrive at Jasper's residence by 9:00 a.m., on June 13, 2012, to perform the move. Defendant's movers had not arrived by approximately 12:30 p.m., so Jasper called Defendant to inquire of the movers' whereabouts. The person who answered told Jasper that Defendant had forgotten about his move, but that a crew would be at his residence shortly.

At approximately 2:30 p.m., Defendant's movers arrived at Jasper's residence. They arrived in an old, relatively small truck bearing a small sign that read: "Two Men and Two Trucks." They did not bring with them dollies, moving blankets, plastic wrap, or any other moving supplies. After completing the move, Defendant charged Jasper $700. Defendant calculated the increased rate from its previous quote by charging Dr. Jasper for two hours during which the movers were not performing moving services.


The movers also lost, misplaced, or stole one of his end tables, a weight set, and several paintings, and damaged several other items.

During Jasper's move, the property manager of the condominium complex into which Jasper was moving called the Omaha Franchise, under the belief that Defendant's movers were working for the Omaha Franchise, to complain about the inferior moving services being provided to Jasper. In response to the complaints it received from Jasper's property manager, Lafayette Williams, the Omaha Franchise's moving consultant and quality control claims manager, drove to Jasper's new condominium complex and saw at least one of Defendant's workers wearing a hat bearing the TWO MEN AND A TRUCK Mark. While at the condominium complex, Williams also took photos of Defendant's truck and picked up fliers bearing the "Two Men and Two Trucks" name.

### B. Carol Jeppesen

In the summer of 2012, Carol Jeppesen sought to hire the Omaha Franchise to perform a local residential move. She had been a customer of the Omaha Franchise in connection with previous moves and was very satisfied with the services she received. She searched the Omaha telephone directory and found an entry for "Two Men and Two Trucks." She believed the entry was for the Omaha Franchise, and called the number associated with the listing, (402) 208-0210. When she called the number, she spoke with someone who identified himself as "Robert." Because she believed "Robert" was a representative of the Omaha Franchise, she scheduled an appointment for Defendant to come to her house and prepare an estimate. Because Defendant failed to show up for the scheduled appointment, she called again, spoke to "Robert," and

rescheduled the appointment. Defendant failed to show up for the rescheduled appointment. Jeppesen called Defendant a third time, spoke to "Robert" again, and rescheduled the appointment once more. Defendant again failed to show up at Jeppesen's house to prepare an estimate.

On or about August 3, 2012, Jeppesen found what she believed to be an alternate number for the Omaha Franchise. This number was in fact the actual number for the Omaha Franchise, and an Omaha Franchise representative explained to Jeppesen that "Two Men and Two Trucks" was not an authorized franchisee of, and was not in any way associated or connected with, Plaintiff.

### C. April Swingle

In August 2012, April Swingle, wanted to order moving boxes from the Omaha Franchise. She was a previous customer of the Omaha Franchise and was satisfied with the services she had received. She searched the Omaha telephone directory and found an entry for "Two Men and Two Trucks." She believed that entry was for the Omaha Franchise. She called the telephone number associated with the "Two Men and Two Trucks" entry, (402) 208-0210. Because she believed she called the Omaha Franchise, she scheduled an appointment for Defendant to deliver moving boxes to her mother's house. Defendant did not show up for the appointment as scheduled.

Swingle eventually found what she believed to be an alternate phone number for the Omaha Franchise. This number was in fact the actual number for the Omaha Franchise. When she called the Omaha Franchise, a representative explained to Swingle that it did not have a record that she had booked it to deliver boxes and that

"Two Men and Two Trucks" was not an authorized franchisee of, or in any way associated, affiliated, or connected with, Plaintiff.

### D.  Gretchen Mackenzie

In August 2012, Gretchen Mackenzie, a blind woman, wanted to hire the Omaha Franchise to perform a local residential move.  She used the Omaha Franchise for a previous move and had been satisfied with the services she received.  Because she is blind, she called information at the number "411" and asked the operator to forward her to the "Two Men and a Truck" moving company.  Once connected, she asked the individual who answered the phone if she was speaking with "Two Men and a Truck." The individual who answered the phone told Mackenzie that she was, and that his company could perform her residential move, but that someone would need to visit her home to prepare an estimate.

The individuals who showed up at Mackenzie's home represented that they worked for "Two Men and a Truck."  They also told Mackenzie that she could get a fifty-percent discount off the cost of her move if she paid up-front in cash, and that with the discount, the cost of the move would be $275.  Because she believed she was dealing with the Omaha Franchise, she paid the $275 in cash to the individuals at her home. Mackenzie scheduled her move to occur at 9:00 a.m. on August 27, 2012.

On August 27, 2012, the movers did not show up as scheduled.  Friends who were assisting Mackenzie with her move began trying to contact the movers to determine why they had not shown up.  When attempting to contact Mackenzie's movers, Mackenzie's friends called the Omaha Franchise.  The Omaha Franchise

informed Mackenzie's friends that it did not have a record that Mackenzie had scheduled the Omaha Franchise to perform her move.

Eventually, Mackenzie and one of her friends talked to an individual representing "Two Men and Two Trucks." The individual identified himself as "Robert." After Mackenzie's friend threatened to report his conduct to the relevant authorities and the Better Business Bureau, "Robert" agreed to send movers to Mackenzie's home to perform the move. A few hours later, Defendant's movers from arrived at Mackenzie's home and performed the move.

During the move, a Nebraska Public Service Commission official arrived and served the movers with multiple citations, including citations for performing moving services without insurance and without authority from the State of Nebraska. Mackenzie learned from that Nebraska Public Service Commission official and from the Omaha Franchise that the entity that she had hired to perform her move operated under the name "Two Men and Two Trucks."

**IV. The Current Lawsuit**

On September 21, 2012, Plaintiff filed its Complaint (Filing No. 1), asserting three causes of action against the Defendant: (1) infringement of federally registered trademarks under 15 U.S.C. § 1114; (2) federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a)(1)(A); and (3) common law unfair competition and infringement. In its Motion, the Plaintiff requests that the Defendant, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, be permanently enjoined from: (1) using the designation "Two Men and Two Trucks," the URL <www.twomenandtwotrucks.com>, and any other

confusingly similar imitation of the TWO MEN AND A TRUCK Mark in connection with Defendant's business or services; and (2) using any mark, name, logo, or source designation of any kind that is a reproduction, colorable imitation, copy, or simulation of or confusingly similar to, or in any way similar to, the marks or logos of Plaintiff, or is likely to cause mistake, deception, confusion, or public misunderstanding that Defendant's business or services are the business or services of Plaintiff, or are in any way related to Plaintiff. (Filing No. 8.)

Plaintiff also asks that the Defendant be directed to: (1) remove all signage from his vehicles and place of business that bear Plaintiff's TWO MEN AND A TRUCK Mark or any other confusingly similar mark, including the "Two Men and Two Trucks" mark; and (2) cease using all advertising and promotional materials, stationary, envelopes, business cards, invoices, fliers, websites, and similar material bearing Plaintiff's TWO MEN AND TWO TRUCKS Mark, or any other name that is confusingly similar to Plaintiff's TWO MEN AND A TRUCK Mark, including the "Two Men and Two Trucks" mark. Finally, Plaintiff requests that Defendant be directed to surrender control of the URL <www.twomenandtwotrucks.com> and the telephone number (402) 208-0210, with the Defendant bearing the cost of the assignment and ensuring that the assignment is free of transfer fees, payments, or other encumbrances imposed by the domain registry, the telephone company, or any other party relating to the assignment. (*Id.*)

## STANDARD

A district court considers the four factors set forth in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981), when deciding whether to issue a preliminary injunction. *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th

Cir. 2011) (citing *Dataphase*, 640 F.2d at 114). Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase*, 640 F.2d at 114. "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). The movant bears the burden of establishing the propriety of the injunction. *See Roudachevski*, 648 F.3d at 705.[3]

## DISCUSSION

### I. Likelihood of Success on the Merits

To establish a claim for trademark infringement, whether it is brought under the Lanham Act, §§ 1114 or 1125, or under Nebraska's common law,[4] Plaintiff must show "that it has ownership or rights in the trademark and that the defendant has used the mark in connection with goods or services in a manner likely to cause consumer confusion as to the source or sponsorship of the goods or services." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011).

#### A. Ownership Rights in the TWO MEN AND A TRUCK Mark

Plaintiff's TWO MEN AND A TRUCK Mark has become "incontestable." Generally, "the registration of a trademark as incontestable is conclusive evidence of the registrant's . . . ownership of the trademark . . ." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 912 (8th Cir. 1994); *see also* 15 U.S.C. §§ 1115(b), 1065. Therefore,

---

[3] The Lanham Act authorizes a court to grant injunctive relief in cases of trademark infringement and unfair competition. *See* 15 U.S.C. § 1116.

[4] S*ee Mut. of Omaha Ins. Co. v. Novak*, 648 F. Supp. 905, 909 (D. Neb. 1986), *aff'd*, 836 F.2d 397 (8th Cir. 1987); *Worldcare Ltd. Corp. v. World Ins. Co.*, No. 8:11CV99, 2011 WL 1770445, at *3 (D. Neb. May 9, 2011) (citing *Devon Park*, 634 F.3d at 1008–09).

Plaintiff has established a likelihood of success on its claim that it owns the TWO MEN AND A TRUCK Mark.

### B. Likelihood of Confusion

To determine if "a likelihood of confusion exists," courts will consider six factors: "'(1) the strength of the trademark; (2) the similarity between the plaintiff's and defendant's marks; (3) the competitive proximity of the parties' products; (4) the alleged infringer's intent to confuse the public; (5) evidence of any actual confusion; and (6) the degree of care reasonably expected of the plaintiff's potential customers.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009) (quoting *Anheuser-Busch, Inc. v. Balducci Publ'ns,* 28 F.3d 769, 774 (8th Cir.1994)). A review of these factors indicates that Plaintiff has shown it is likely to establish that there is a likelihood of confusion in this case.

#### 1. Strength of the Owner's Mark

"[A] 'strong and distinctive trademark is entitled to greater protection than a weak or commonplace one.'" *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010) (quoting *Frosty Treats, Inc. v. Sony Entm't Am. Inc.*, 426 F.3d 1001, 1008 (8th Cir. 2005)). A mark's "[s]trength consists of both conceptual strength and commercial strength." *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009); *see also Worldcare*, 2011 WL 1770445, at *4 (citing *George & Co.*, 575 F.3d at 393). The uncontested facts indicate Plaintiff is likely to show that its use of the TWO MEN AND A TRUCK Mark is strong both conceptually and commercially.

First, as Plaintiff contends, the TWO MEN AND A TRUCK Mark seems to be "suggestive;" it "requires some measure of imagination to reach a conclusion regarding

11

the nature of the" services offered. *Duluth News-Tribune, a Div. of Nw. Pub'ns, Inc. v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996). Therefore, Plaintiff is likely to show that its TWO MEN AND A TRUCK Mark is conceptually strong. *See Frosty Treats Inc. v. Sony Computer Entm't Am. Inc.*, 426 F.3d 1001, 1005 (8th Cir. 2005) ("Suggestive marks . . . are entitled to protection regardless of whether they have acquired secondary meaning.").[5]

Second, Plaintiff is the largest franchised local moving company in the United States with over 180 locations, over 1,300 trucks operating throughout the United States bear the TWO MEN AND A TRUCK Mark, and Plaintiff has continuously used its TWO MEN AND A TRUCK Mark in connection with the services it offers since at least 1988. Based on this use, Plaintiff is likely to show that its TWO MEN AND A TRUCK Mark is commercially strong. *See George & Co.*, 575 F.3d at 395 (stating that courts consider factors such as "the plaintiff's record of . . . success" and the "length and exclusivity of the plaintiff's use of the mark" to determine the commercial strength of a mark); *see also Worldcare*, 2011 WL 1770445, at *5 ("WorldCare has demonstrated that it used the WORLDCARE mark, uncontested, for nearly ten years. Based on this use, WorldCare is likely to show that its use of the WORLDCARE is commercially strong . . .").

### 2. Similarity and Competitive Proximity

"Similarity is based on an examination of [a] mark[ ] as a whole, including visual impression and sound." *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir.

---

[5] Even if the mark were deemed "descriptive," because it "immediately conveys the nature or function of the product," *Duluth News-Tribune*, 84 F.3d at 1096, the mark has become "incontestable," and would still make likely that the mark is conceptually strong. *See Aromatique, Inc. v. Gold Seal*, Inc., 28 F.3d 863, 869 (8th Cir. 1994) ("Registered marks . . . are presumed to be distinctive . . ."); *see also Duluth News-Tribune*, 84 F.3d at 1096 ("A descriptive mark . . . is entitled to protection only if it has become distinctive . . . ").

1980). Closely related products or services require "less similarity . . . to support a finding of infringement." *Id.*

The difference between the two marks here, "TWO MEN AND A TRUCK" and "Two Men and Two Trucks," appears minimal, and Plaintiff and Defendant offer identical services to the same customer and potential customer base. Therefore, Plaintiff has satisfied its burden of showing that it is likely to establish that Plaintiff's and Defendant's marks are "similar" and that the services they offer are in direct competition.

### 3. Intent to Confuse

Under the "intent to confuse" factor, the question is "whether the alleged infringer intended to pass off its goods as the trademark owner's goods." *Sensient*, 613 F.3d at 766 (citing *Frosty Treats*, 426 F.3d at 1008). Putting aside the similarity between the marks, the record reflects that while providing services, one of Defendant's movers wore a hat bearing the TWO MEN AND A TRUCK Mark. Furthermore, the record also reflects that when customers called Defendant asking if they had reached the Omaha Franchise, the individual who answered the phone represented that the customer had in fact reached the Omaha Franchise. Based on these facts, Plaintiff has shown that it is likely to establish the Defendant intended to cause the public to believe that it was associated with Plaintiff.

### 4. Actual Confusion

The record reflects that at least four instances of direct, actual consumer confusion occurred. Therefore, Plaintiff has shown it is likely actual confusion occurred. *See Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999) ("Although evidence of actual confusion is not necessary for a finding that a

likelihood of confusion exists, it is perhaps the most effective way to prove a likelihood of confusion.").

### 5. Potential Customers' Degree of Care

Due to the apparent similarity of the marks, intent to confuse the public, and incidents of actual confusion, Plaintiff has shown that it is likely Defendant's mark may cause confusion despite the degree of care a consumer might exercise. *See Worldcare*, 2011 WL 1770445, at *8 ("In that narrow context, the competing iterations of similar marks may cause confusion despite a consumer's degree of care.").

### 6. Summary

Weighing the factors a Court considers when determining if there is a likelihood of confusion, the Court finds that Plaintiff is likely to establish customer confusion between the Plaintiff's and Defendant's marks.

## II. Threat of Irreparable Harm

Because it appears likely that there have been actual incidents of confusion and because Plaintiff has shown that it is likely to establish a likelihood of confusion, it has also shown that a threat of irreparable harm is present. *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 789 (8th Cir. 2004) ("A showing that confusion is likely supports a strong presumption of irreparable harm."); *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that Kellogg can demonstrate a likelihood of consumer confusion.").

### III. Balance of Hardships

The Court finds that the balance of hardships weighs in favor of an injunction. Absent an injunction, Plaintiff's trademark may continue to be infringed, possibly resulting in the Plaintiff suffering a loss of reputation and goodwill. On the other hand, an injunction will only prevent Defendant from competing with Plaintiff by using a mark that may cause consumers to believe they are actually doing business with Plaintiff.

### IV. Public Interest

While the public places value on free competition,[6] the public has an interest "'in avoiding consumer confusion.'" *Anheuser-Busch*, 28 F.3d at 776. As explained previously, an injunction here would not prohibit Defendant from competing with Plaintiff; it would only prohibit Defendant from using a mark likely to be confused with Plaintiff's TWO MEN AND A TRUCK Mark. Therefore, the "public interest" factor also weighs in favor of an injunction.

### CONCLUSION

Based on an analysis of the *Dataphase* factors, the Court finds that a preliminary injunction is warranted. Therefore, the Plaintiff's Motion will be granted, in part. Accordingly,

IT IS ORDERED that the Plaintiff's Motion for Preliminary Injunction (Filing No. 8) is granted, as follows:

1. Defendant, and all affiliated or related entities, agents, officers, employees, representatives, successors, assigns, attorneys, and all other

---

[6] *See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 505 (8th Cir. 1987) ("By the very nature of a trademark action, the value placed on free competition must be weighed against any individual's property interest in that trademark, so that the analytic focus should also be on the consumer's ability to obtain the lowest priced goods.").

persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, are enjoined from:

    a. using the designation "Two Men and Two Trucks," the URL <www.twomenandtwotrucks.com> and any confusingly similar imitation of Plaintiff's TWO MEN AND A TRUCK Mark, in connection with Defendant's business or services, including but not limited to the advertising of those services and use of the above-referenced marks or designations within the phrase "formerly known as . . .";

    b. using any trademark, service mark, name, logo, or source designation of any kind that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to, the trademarks, service marks, or logos, of Plaintiff, or is likely to cause confusion, mistake, deception, or public misunderstanding that Defendant's business or services are the business or services of Plaintiff, or are sponsored by or in any way related to Plaintiff;

2. Defendant shall immediately:

    a. remove completely all internal and external signage from Defendant's place of business and vehicles that bear Plaintiff's TWO MEN AND A TRUCK Mark, the mark "Two Men and Two Trucks," and any name or mark that is confusingly similar to Plaintiff's TWO MEN AND A TRUCK Mark;

    b.    cease all use of advertising and promotional materials, stationary, envelopes, business cards, invoices, fliers, websites, and similar materials bearing Plaintiff's TWO MEN AND A TRUCK Mark, the "Two Men and Two Trucks" mark, and any name or mark that is confusingly similar to Plaintiff's TWO MEN AND A TRUCK Mark;

3.    Defendant shall also, within five (5) business days after entry of this Order, surrender control to Plaintiff of the URL <www.twomenandtwotrucks.com> and the telephone number (402) 208-0210.  The costs of such assignment shall be borne solely by Defendant, and the assignment to Plaintiff shall be free of transfer fees, payments, or other encumbrances imposed by the domain registry, the telephone company, or any other party relating to the assignment; and

4.    Within ten (10) business days after entry of this Order, Defendant shall provide the Court with written certification of his compliance with the terms of this Order.

Dated this 7th day of November, 2012.

                                          BY THE COURT:

                                          s/Laurie Smith Camp
                                          Chief United States District Judge